IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

NICOLE TURNETINE, )
 )
 Plaintiff, )
 )
vs. ) Case No. 09-1183-WEB
 )
MICHAEL J. ASTRUE, )
Commissioner of )
Social Security, )
 )
 Defendant. )
_____)

RECOMMENDATION AND REPORT

This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff disability insurance benefits and supplemental security income payments. The matter has been fully briefed by the parties and has been referred to this court for a recommendation and report.

**I. General legal standards**

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the

correct legal standards. Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the conclusion. The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion. Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989). Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted. Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational. Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992). The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met. Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial

gainful activity (SGA).  The claimant's physical or mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not

3

to be disabled.  If the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis.  Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993).  At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy.  Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993).  The Commissioner meets this burden if the decision is supported by substantial evidence.  Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC).  This RFC assessment is used to evaluate the claim at both step four and step five.  20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

**II. History of case**

On November 6, 2008, administrative law judge (ALJ) Michael R. Dayton issued his decision (R. at 14-23).  Plaintiff alleges that she has been disabled since September 24, 2005 (R. at 14). Plaintiff is insured for disability insurance benefits through

December 31, 2009 (R. at 16). At step one, the ALJ determined that plaintiff has not performed substantial gainful activity since September 24, 2005, the alleged onset date of disability (R. at 16). At step two, the ALJ found that plaintiff has the following severe impairments: bipolar disorder and personality disorder with schizotypal traits (R. at 16). At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 17). After determining plaintiff's RFC (R. at 18), the ALJ found at step four that plaintiff has no past relevant work (R. at 21). At step five, the ALJ found that plaintiff can perform other work that exists in significant numbers in the national economy (R. at 22-23). Therefore, the ALJ concluded that plaintiff was not disabled (R. at 23).

**III. Did the ALJ err in finding that plaintiff did not meet or equal listed impairment 12.04?**

Plaintiff has the burden at step three of demonstrating, through medical evidence, that his/her impairments meet all of the specified medical criteria contained in a particular listing. Riddle v. Halter, 10 Fed. Appx. 665, 667 (10th Cir. March 22, 2001). An impairment that manifests only some of those criteria, no matter how severely, does not qualify. Sullivan v. Zebley, 493 U.S. 521, 530, 110 S. Ct. 885, 891 (1990). Because the listed impairments, if met, operate to cut off further inquiry, they should not be read expansively. Caviness v. Apfel, 4 F.

5

Supp.2d 813, 818 (S.D. Ind. 1998).

The ALJ is required to discuss the evidence and explain why he found that the plaintiff was not disabled at step three. This court should not properly engage in the task of weighing evidence in disability cases. The court's function is only to review the Commissioner's decision to determine whether his factual findings are supported by substantial evidence and whether he applied the correct legal standards. In the absence of ALJ findings supported by specific weighing of the evidence, the court cannot assess whether relevant evidence adequately supports the ALJ's conclusion that the plaintiff did not meet or equal any listed impairment. <u>Clifton v. Chater</u>, 79 F.3d 1007, 1009 (10th Cir. 1996).

The ALJ found that plaintiff did not meet or equal 12.04 because the "B" and "C" criteria were not satisfied (R. at 17-18). In order to meet listed impairment 12.04, plaintiff must meet the requirements of 12.04(A) and 12.04(B), or meet the requirements of 12.04(C). The "B" and "C" criteria are set forth below:

> B. Resulting in at least two of the following:
>
> 1. Marked restriction of activities of daily living; or
> 2. Marked difficulties in maintaining social functioning; or
> 3. Marked difficulties in maintaining concentration, persistence, or pace; or
> 4. Repeated episodes of decompensation, each

of extended duration;

C. Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:

1. Repeated episodes of decompensation, each of extended duration; or
2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or
3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

20 C.F.R. Pt. 404, Subpt. P, App. 1 (2009 at 508).

The ALJ made the following findings regarding the "B" criteria:

> In activities of daily living, the claimant has mild restriction. The claimant reported some problems with personal care in her November 2006 Function report (Exhibit 7E) but indicated she had no problems with personal care in her March 2007 Function report (Exhibit 13E). Her third party reporter also indicated that she had no problems with personal care (Exhibit 5E). The claimant reported that she needs reminders to shower and take her medicine. She reported that she prepares her own meals, does laundry and the dishes, shops for groceries but she needs help paying her bills. (Exhibit 7E) The claimant has mild restriction in this area.
>
> In social functioning. the claimant has mild difficulties. The claimant reported that she

gets paranoid sometimes around a lot of people or real anxious. She stated that she has problems getting along with her father because he does not understand her illness. The claimant also reported that her social activities have decreased. (Exhibit 7E) The claimant's third party reporter stated that the claimant was not very sociable. She stated that the claimant had problems getting along with authority figures because she gives up easily and gets upset. (Exhibit 13E) The claimant has mild restriction in this area.

With regard to concentration, persistence or pace, the claimant has moderate difficulties. The claimant reported that she has problems with her memory, completing tasks, concentration, understanding things and following instructions. She stated that she can pay attention for 30 minutes. She noted that she does not follow instructions very well unless she writes them down. The claimant reported that she does not handle stress or changes in routine very well. (Exhibit 7E) On mental status examination, the claimant's attention and concentration were noted to be only fair because the claimant did not put a whole lot of effort into responding to questions. (Exhibit 4F) The claimant has moderate difficulties in this area.

As for episodes of decompensation, the claimant has experienced no episodes of decompensation, which have been of extended duration. The claimant had a psychiatric admission in May 2005 but she had not been taking her medication. On discharge, the claimant admitted that as long as she takes her medication she is able to do very well (Exhibits 2F) and her therapist agreed (Exhibit 3F/23). The record indicates that the claimant has generally done well since that admission. (Exhibits 3F, 9F and 12F) Therefore, there are no episodes of decompensation as defined by Social Security rules.

(R. at 17-18).

Plaintiff argues that the ALJ should have given greater weight to the opinions of a treating psychiatrist, Dr. Xu, who found that plaintiff had marked limitations in four of eight categories under concentration and persistence on September 22, 2008 (Doc. 12 at 11; R. at 430-431). However, Dr. Xu, on August 27, 2008, less than one month previously, had found that plaintiff only had moderate limitations in those same four categories under concentration and persistence (R. at 427-428). Furthermore, Dr. Xu did not find that plaintiff had marked impairments in activities of daily living or maintaining social functioning, and also did not find episodes of decompensation. In fact, Dr. Xu indicated in August and in September 2008 that plaintiff had no significant limitations in all five categories of social interaction (R. at 428, 431). The record does not show that Dr. Xu at any time opined that plaintiff's impairments met or equaled listed impairment 12.04. Thus, Dr. Xu's opinions do not demonstrate that plaintiff's impairments meet or equal listed impairment 12.04.

Plaintiff does not cite to any other evidence that clearly demonstrates that plaintiff's impairments meet or equal listed impairment 12.04. The ALJ provided a detailed and reasonable explanation of his basis for finding that plaintiff's impairments do not meet the "B" criteria. Dr. Xu's opinions, relied on by

9

the plaintiff, do not clearly indicate or demonstrate that plaintiff's impairments meet of equal listed impairment 12.04.

The ALJ further stated that the evidence failed to establish the presence of the "C" criteria (R. at 18). Despite the fact that plaintiff has the burden of proof at step three, plaintiff's brief did not discuss the "C" criteria and did not cite to any evidence to support an argument that her impairments met the "C" criteria. The court finds that substantial evidence supports the ALJ's determination that plaintiff's impairments do not meet or equal listed impairment 12.04.[1]

**IV. Are the ALJ's RFC findings supported by substantial evidence and do they comply with the requirements of SSR 96-8p?**

The ALJ found that plaintiff had no physical impairments, but had moderate limitations in 3 categories: 1) ability to get along with co-workers or peers without distracting them or exhibiting behavioral extremes, 2) maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness, and 3) set realistic goals or make plans independently of others (R. at 18). According to SSR 96-8p, the RFC assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific

---

[1] Although not cited to by the ALJ in his decision, the court would note that Dr. Schloesser, a state agency non-examining physician, opined that plaintiff did not meet the "B" or the "C" criteria (R. at 388, 389).

medical facts...and nonmedical evidence." The ALJ must explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved. The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the ALJ must explain why the opinion was not adopted. SSR 96-8p, 1996 WL 374184 at *7. SSR rulings are binding on an ALJ. 20 C.F.R. § 402.35(b)(1); Sullivan v. Zebley, 493 U.S. 521, 530 n.9, 110 S. Ct. 885, 891 n.9, 107 L. Ed.2d 967 (1990); Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). When the ALJ fails to provide a narrative discussion describing how the evidence supports each conclusion, citing to specific medical facts and nonmedical evidence, the court will conclude that his RFC conclusions are not supported by substantial evidence. See Southard v. Barnhart, 72 Fed. Appx. 781, 784-785 (10th Cir. July 28, 2003). The ALJ's decision must be sufficiently articulated so that it is capable of meaningful review; the ALJ is charged with carefully considering all of the relevant evidence and linking his findings to specific evidence. Spicer v. Barnhart, 64 Fed. Appx. 173, 177-178 (10th Cir. May 5, 2003). It is insufficient for the ALJ to only generally discuss the evidence, but fail to relate that evidence to his conclusions. Cruse v. U.S. Dept. of Health & Human Services, 49 F.3d 614, 618 (10th Cir. 1995). When the ALJ has failed to

11

comply with SSR 96-8p because he has not linked his RFC determination with specific evidence in the record, the court cannot adequately assess whether relevant evidence supports the ALJ's RFC determination. Such bare conclusions are beyond meaningful judicial review. Brown v. Commissioner of the Social Security Administration, 245 F. Supp.2d 1175, 1187 (D. Kan. 2003).

The ALJ summarized the medical evidence, including treatment records and a consultative examination by Dr. Allen (R. at 19-20). The ALJ also summarized statements and testimony of the plaintiff (R. at 19-21). As noted above, the ALJ found that plaintiff had three moderate mental impairments. The ALJ explained his reasoning as follows:

> Moderately limited is defined as a significant limitation that can normally be performed in a satisfactory manner. Due to the claimant's history of difficulty working alongside and for other people, it is reasonable to conclude that she is moderately limited in her ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. The claimant indicated that she needs reminders to shower daily. She reported that she has problems getting along with her father. The claimant reported that she does not handle stress or changes in routine very well. (Exhibit 7E) The claimant's third party reporter stated that the claimant had problems getting along with authority figures because she gives up easily and gets upset. (Exhibit 13E) For these reasons, the evidence supports a finding that the claimant is moderately limited in her ability to maintain socially appropriate behavior and to adhere

12

> to basic standards of neatness and
> cleanliness. Due to the claimant's history of
> frequent change of jobs and schools, it is
> reasonable to conclude that she is moderately
> limited in her ability to set realistic goals
> or make plans independently of others.

(R. at 21). The record also contains a state agency assessment by a nonexamining physician, Dr. Schloesser, in which he found that plaintiff had the same three moderate mental impairments as found by the ALJ in his decision (R. at 392-393, Exhibit 8F). Although the ALJ did not mention the opinions of Dr. Schloesser in his decision, at the hearing the ALJ asked the vocational expert (VE) to review Exhibit 8F and to determine if plaintiff could perform past work or other work based on the limitations contained in Exhibit 8F (R. at 52-53). Therefore, it does appear that the ALJ relied on the opinions of Dr. Schloesser. In his decision, the ALJ provided specific, legitimate reasons for determining that plaintiff had the three moderate limitations set forth in the RFC findings and the opinion of Dr. Schloesser.

The ALJ also considered the opinions of Dr. Xu, a treating psychiatrist, who indicated that plaintiff had moderate limitations in 8 out of 20 categories on August 27, 2008 (R. at 427-428); less than one month later, Dr. Xu indicated on September 22, 2008 that plaintiff was markedly limited in 6 categories, and moderately limited in 7 categories (R. at 430-431). The ALJ found that the opinions of Dr. Xu were inconsistent with the treatment records. The ALJ, although

13

noting that Dr. Xu gave plaintiff a GAF of 48, indicating serious impairments, also stated that mental status examinations showed no abnormalities. Furthermore, plaintiff reported that her mood was stable and that the medication was working. The ALJ concluded that the opinions of Dr. Xu were given little weight because they were not well supported or consistent with the record (R. at 21).

Dr. Xu's treatment record of January 25, 2008, notes that plaintiff has not been able to keep a job or live independently. Plaintiff reported her medications were working and her mood was stable. Dr. Xu noted her memory, attention and concentration were intact (R. at 417). He also assessed plaintiff's insight and judgment as good (R. at 418). On March 19, 2008, Dr. Xu indicated that plaintiff took a bus to her appointment. Plaintiff indicated she was enrolled at Cowley County Community College. Plaintiff reported her medications were working and her mood was stable. Dr. Xu indicated that plaintiff's memory, attention and concentration were intact (R. at 420). Dr. Xu also indicated that her insight and judgment were good (R. at 421). Dr. Xu next saw plaintiff on May 23, 2008 (R. at 423). Plaintiff took a bus to arrive at her appointment. Plaintiff reported feeling better since her last exam and indicated that her mood was stable. She had to drop out of Cowley County Community College because of transportation problems. Again, Dr. Xu

indicated that her memory, attention and concentration were intact (R. at 423). He again indicated that her insight and judgment was good (R. at 424).

The ALJ gave little weight to the opinions of Dr. Xu because they were not well supported or consistent with his treatment records. Although Dr. Xu found on August 27, 2008 that plaintiff had a moderate limitation in her ability to maintain attention and concentration for extended periods (R. at 427), and found on September 27, 2008 that she had a marked limitation in this category (R. at 430), the treatment records of Dr. Xu indicated on January 25, 2008, March 19, 2008 and May 23, 2008 that her memory, attention and concentration were intact (R. at 417, 420, 423). Earlier records from other treatment providers (May 3, 2007, July 16, 2007, and November 16, 2007 also indicated that plaintiff's memory, attention and concentration were intact (R. at 406, 411, 415). Thus, there is clearly no support in the treatment records that plaintiff had either a moderate or a marked limitation in her ability to maintain attention and concentration for extended periods.

The treatment records also fail to clearly support a finding that plaintiff had moderate or marked limitations in other categories. As noted by the ALJ, Dr. Xu indicated on August 27, 2008 that plaintiff had 8 moderate limitations (R. at 427-428). Less than one month later, on September 22, 2008, Dr. Xu opined

that plaintiff had 7 moderate and 6 marked limitations (R. at 430-431).  However, the treatment records make no reference to either moderate or marked limitations.  Although many of the limitations on the RFC form filled out by Dr. Xu are not specifically discussed in the treatment records, when they are discussed, as with attention and concentration, they do not support the opinions expressed by Dr. Xu.  Thus, on the facts of this case, the ALJ set forth a legitimate basis for discounting the opinions of Dr. Xu.

Plaintiff relies on the fact that there are numerous GAF scores of 50 or below.[2]  A GAF score of 41-50 generally indicates serious symptoms.  Standing alone, a low GAF score does not

---

[2]GAF (global assessment of functioning) scores can be found in the Diagnostic and Statistical Manual of Mental Disorders. The scores in this case represent the following:

> 51-60: **Moderate symptoms** (e.g., flat affect and circumstantial speech, occasional panic attacks) **OR moderate difficulty in social, occupational or school functioning** (e.g., few friends, conflicts with peers or co-workers).

> 41-50: **Serious symptoms** (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting), **OR any serious impairment in social, occupational, or school functioning** (e.g., no friends, unable to keep a job).

Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR) (4th ed., text revision, American Psychiatric Association 2000 at 34) (emphasis in original).

necessarily evidence an impairment seriously interfering with a claimant's ability to work. A claimant's impairment might lie solely with the social, rather than the occupational sphere. A GAF score of fifty or less, however, does suggest an inability to keep a job. For this reason, such a GAF score should not be ignored. Lee v. Barnhart, 117 Fed. Appx. 674, 678 (10th Cir. Dec. 8, 2004). Because a GAF score may not relate to a claimant's ability to work, the score, standing alone, without further explanation, does not establish whether or not plaintiff's impairment severely interferes with an ability to perform basic work activities. See Eden v. Barnhart, 109 Fed. Appx. 311, 314 (10th Cir. Sept. 15, 2004). GAF scores are not considered absolute determinants of whether or not a claimant is disabled. Heinritz v. Barnhart, 191 Fed. Appx. 718, 722 (10th Cir. Aug. 10, 2006).

The ALJ noted GAF scores above and below 50 (R. at 19-20, 21), but in light of all the evidence, found that Dr. Xu's opinions were not supported by the treatment records. The ALJ instead relied on the limitations set forth by Dr. Schloesser, and set forth in some detail his reasons for adopting those limitations (R. at 21). The court will not reweigh the evidence or substitute its judgment for that of the Commissioner. Hackett v. Barnhart, 395 F.3d 1168, 1173 (10th Cir. 2005); White v. Barnhart, 287 F.3d 903, 905, 908, 909 (10th Cir. 2002). Although

17

the court will not reweigh the evidence, the conclusions reached by the ALJ must be reasonable and consistent with the evidence. See Glenn v. Shalala, 21 F.3d 983, 988 (10th Cir. 1994)(the court must affirm if, considering the evidence as a whole, there is sufficient evidence which a reasonable mind might accept as adequate to support a conclusion). The court can only review the sufficiency of the evidence. Although the evidence may support a contrary finding, the court cannot displace the agency's choice between two fairly conflicting views, even though the court may have justifiably made a different choice had the matter been before it de novo. Oldham v. Astrue, 509 F.3d 1254, 1257-1258 (10th Cir. 2007).

Although the evidence in this case is not clear cut, it is not the province of the court to reweigh the evidence. This case does not involve a wholesale failure on the part of the ALJ to give any reasons for his decision. See Taylor v. Astrue, 266 Fed. Appx. 771, 777 (10th Cir. Feb. 22, 2008). The court finds that there is sufficient evidence to support the ALJ's RFC findings. The ALJ appeared to rely on the opinions of Dr. Schloesser in making his RFC findings, as can be seen by his specific reference to Dr. Schloesser's findings when formulating the hypothetical question to the VE (R. at 52-53). Furthermore, the ALJ complied with SSR 96-8p by providing a specific and legitimate narrative explanation in support of his RFC findings;

the ALJ also gave an adequate explanation for giving little weight to the opinions of Dr. Xu.

IT IS THEREFORE RECOMMENDED that the decision of the Commissioner be affirmed.

Copies of this recommendation and report shall be provided to counsel of record for the parties. Pursuant to 28 U.S.C. § 636(b)(1), as set forth in Fed.R.Civ.P. 72(b) and D. Kan. Rule 72.1.4, the parties may serve and file written objections to the recommendation within 14 days after being served with a copy.

Dated at Wichita, Kansas, on June 3, 2010.

                        s/Gerald B. Cohn
                        GERALD B. COHN
                        United States Magistrate Judge